**FAIRVIEW CREAMERY, Inc., v. WICK-ARD, Secretary of Agriculture, et al.**

District Court, D. Maine, S. D.

Jan. 20, 1942.

Choate, Hall & Stewart, of Boston, Mass. (Marcien Jenckes, of Boston, Mass., of counsel), and Verrill, Hale, Dana & Walker, of Portland, Me. (Robert Hale, of Portland, Me., of counsel), for plaintiff.

Edward J. Harrigan, Asst. U. S. Atty., of Portland, Me., for defendants.

PETERS, District Judge.

This is a complaint brought under the authority of the Agricultural Adjustment Act, 7 U.S.C.A. § 608c (15) (B), by a creamery company, which is a "handler" of milk as defined in that Act, against the Secretary of Agriculture and a market administrator appointed by him for the Greater Boston milk market area, asking review of a ruling made by the Secretary and for certain relief.

The ruling referred to was one made January 31, 1941, to the effect that the previous action of the administrator in using a certain freight rate to determine allowances made the plaintiff in settlements for milk delivered by him in Boston was "correct".

The statute, in providing for a review of the Secretary's ruling by this Court, limits its authority to a determination as to whether the ruling was "in accordance with law". If it is found not to be, the Court has certain powers by way of correction of the error.

As the Secretary's action here, taken under Paragraph (15) (A), was in effect simply a ruling that a previous order of the administrator was "in accordance with law", it would seem that I must pass upon the legality of the administrator's action in order to give any useful effect to the statute. If the administrator's action was lawful the Secretary's action in saying it was lawful is in accordance with law—otherwise not.

This is not an appeal or a new trial. Under the statute and the circumstances of the case I feel that I am limited to the inquiry as to whether the administrator had any authority for his action.

By the terms of the order of the Secretary under which the administrator was acting (Order No. 4 of January 13, 1939), as well as by the language of the Act, the administrator had no powers other than to administer the provisions of the order and to investigate and report on complaints. He had certain specified duties and responsibilities, but he was not a Government official authorized to exercise discretion. One of the "provisions" of the order which he was directed to "administer" related to the freight rates which he was to use in making his adjustments with the handlers in the class in which this plaintiff belonged. It was specified in the order, Article IV, Sec. 2, Par. 2, that "such freight * * * shall be calculated according to applicable rail tariffs for the transportation in carload lots of milk in 40-quart cans and each can shall be considered to contain 85 pounds of milk".

It appears that prior to July 1, 1939, there was only one rail tariff applicable to carload shipments of milk from Skowhegan, the shipping point involved here, to Boston. That was a minimum carload charge for 250 cans of milk of 40 quarts each. The plaintiff's shipments were in 100-can lots of 40 quarts each. On the date mentioned new rate schedules were put into effect and published, namely, one rate for a minimum shipment of 200 cans and another rate for a minimum shipment of 100 cans. The latter rate was plainly applicable to the plaintiff's shipments. In fact, the only claim to the contrary lies in the action of the administrator and the reason given for it.

On July 14, 1939, the administrator issued a notice or order to the handlers in the marketing area involved stating that: "The railroads operating in the Boston milkshed have announced new schedules of rates effective July 1, 1939, for the transportation of milk and its products. * * * The rates per 40-quart can of milk * * * applying to minimum carload shipments of 200 40-quart cans will be the rates used by me in computing class 1 prices for milk received from producers at country plants, pursuant to Article IV, Section 2, Paragraph 2 of the Order * * *."

The explanation given for this action, on the face of it directly contrary to the provisions of the section and paragraph referred to by the administrator—which explicitly provided that the "applicable" rail tariff should be used in the administrator's calculations—is that the new tariff for 200-can minimum shipments was a "revision" and "corresponded" to the former 250-can rate which the administrator had been using before any other rates were established. That such was the fact appears from a letter to the administrator from the agent of the railroad, dated July 7, 1939, relied upon by the defendants; but that did not change the provision in Order Number 4 that the applicable rate should be used, nor was it changed until February 4, 1940, when the Secretary issued a new Order in substance directing that the freight rate thereafter used should be the lowest in force, regardless of the number of cans in a shipment. This explicit provision took the place of the former direction which was in substance to use the rate in force which would apply to the shipment.

It should be stated in explanation of the position of the plaintiff, contending for what was a higher rate, that such rate, if allowed, would reduce the payments plaintiff was obliged to make for the benefit of the producers in settlements through the administrator. It may be that the handler did not use the railroad at all, but nevertheless he was entitled to the allowance of a certain sum for cost of transportation. Rail tariffs were used in fixing that sum.

As I can find no justification for the action of the administrator in ignoring what appears to be his plain direction from the Secretary to use the freight rate applicable to the shipments, I must conclude that his

action was, in the language of the statute, "not in accordance with law", and that the action of the Secretary, through his assistant, in ruling that the action of the administrator was "correct", was likewise not in accordance with law.

Having so determined, it becomes necessary, under the statute, to remand the proceedings to the Secretary with directions to cause such adjustments to be made in the computations of the market administrator in his accounts with the plaintiff between July 1, 1939, and February 4, 1940, as are made necessary by using the rail tariff for shipments of milk from Skowhegan to Boston based on minimum shipments of 100-can lots of 40 quarts each instead of on minimum shipments of 200-can lots of 40 quarts each, with such other adjustments as result therefrom.

■ The defendants have alleged in their answer that the plaintiff has no cause of complaint, because the use of the 200-can rate, rather than the 100-can rate, was an actual benefit to the plaintiff. I take it that could be the case only if certain conditions relating to the dealings between the farmers and the handlers were shown to exist. However, there is nothing in the record relating to this, nor any evidence supporting the figures made by the defendants, which are apparently compiled from their own books, not in evidence, so this defense must be disregarded.

Judgment will be rendered accordingly.